The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence with reference to the errors assigned, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties hereto are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant at all relevant times.
3. Employer is self-insured by Key-Risk Management Services.
4. Plaintiff's average weekly wage for I.C. No. 145365 is $424.56; for I.C. No. 566134 it is $477.70.
5. Plaintiff sustained injuries on 27 June 1991 and 20 July 1994.
6. Plaintiff's injury(s) arose out of and in the course of employment and is/are compensable.
7. The following documents are stipulated into evidence:
a. One Form 21 and Two Forms 28B for Case No. 145365;
b. One Form 18 for Case No. 566134;
c. Medical records of Dr. Donald Glugover (11 pp);
d. Medical records of Dr. David Jones (33 pp);
 e. Plaintiff's personnel records in Case No. 145365 (6 pp); and,
f. Plaintiff's personnel records in Case No. 566134 (5 pp).
8. The issues before the Deputy Commissioner were: (1) whether plaintiff's claim for temporary total disability and permanent partial disability was barred by the statute of limitations contained in North Carolina General Statute Section97-47; and, (2) whether plaintiff was eligible for temporary total disability following her retirement on 1 May 1996 until the date of her death on 27 February 1997.
 ***********
Based upon all of the competent evidence adduced at the hearing, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a sixty-two year old unmarried female.
2. Plaintiff began working for defendant in 1971 as a health care technician. Defendant is a residential medical care facility for mentally retarded patients. Plaintiff's duties consisted of assisting residents in all manner of daily personal care.
3. On 27 June 1991, plaintiff was attacked by a resident, who pushed her against a sink, causing them both to fall with plaintiff bearing the weight of the patient. Plaintiff felt the sudden onset of severe low back pain. Plaintiff presented to Grace Hospital the same day, where she was initially diagnosed in the emergency room with a compression fracture of L-3. X-rays revealed narrowing of L4-5. A bone scan was ordered by Dr. Donald Glugover in order to determine the acuteness of the fracture. On discharge, Dr. Clyde J. Dellinger noted that the bone scan did not reveal a compression of L-3, but did reveal a compression fracture of T-10. She was treated with physical therapy and medications. She was released to return to work on 1 November 1991. Dr. Glugover advised plaintiff that surgery may help her condition, but plaintiff declined and attempted to tolerate the pain.
4. Plaintiff applied for and received a total of $5,094.96 in compensation from 28 June 1991 through 31 October 1991, and a total of $6,531.94 in payment for medical expenses. On 27 November 1991, a Form 28B was filed, showing the final accounting for plaintiff's 1991 compensable injury.
5. Plaintiff continued to work full-time with some pain and intermittent numbness in her left leg. On 5 February 1993, plaintiff again presented to Dr. Glugover complaining of severe back pain radiating into the left lower extremity, resulting from a second incident with a patient. Plaintiff reported this incident to her supervisor the same day. Dr. Glugover again noted the narrowing at L4-5, and diagnosed a possible L4-5 disk herniation. Plaintiff decided to continue working full-time and was treated with anti-inflammatories and muscle relaxants.
6. On 20 July 1994, plaintiff was grabbed around the waist by a resident suffering a seizure. Both fell to the floor, and plaintiff injured her back again. Plaintiff immediately reported this third incident to Ms. Carswell, a nurse at defendant's facility. The incident was subsequently reported to plaintiff's supervisor on 23 July 1994. Plaintiff's supervisor then reported the incident to defendant's personnel department, noting that plaintiff injured her back during the incident, and confirming that the incident occurred as stated in plaintiff's initial report.
7. During the 20 July 1994 incident plaintiff felt pain shoot through her lower back and up her left leg. Immediately following the incident, she rested against a cabinet for several minutes in order to take weight off her left leg. Plaintiff continued to work full-time for the following twelve months. During this time plaintiff's condition gradually worsened, with her bouts of back pain and left leg numbness becoming more severe and frequent. Again, plaintiff attempted to live with and tolerate the pain, but finally its severity scared her and she sought further medical treatment.
8. Plaintiff presented to Dr. David Jones on 21 July 1995. Dr. Jones' 21 July 1995 recitation of plaintiff's medical history noted not only plaintiff's 1991 injury, but also plaintiff's 1994 injury. A 26 July 1995 MRI scan revealed a large disk protrusion and herniation at L4-5, accompanied by focal spinal stenosis.
9. The 20 July 1994 incident caused disabling aggravation of an existing mild or partially herniated L4-5 disc, or potentially was the sole cause of her disabling herniated L4-5 disc. On 20 July 1994, plaintiff suffered an injury to her back arising out of and in the course of employment that was the direct result of a specific traumatic incident of the work assigned.
10. On 31 August 1995, plaintiff underwent back surgery to repair the herniated disk. The surgery was successful. On 26 January 1996, plaintiff was released to return to work beginning 5 February 1996, with some limitations in bending and lifting. Dr. Jones rated plaintiff with a ten-percent permanent partial disability to her back as a result of her injuries and back surgery.
11. On 5 February 1996, plaintiff returned to work with defendant. She managed, with difficulty, to fulfill her duties until 1 May 1996. On 1 May 1996, plaintiff became eligible for retirement and voluntarily left the employment of defendant. There was no medical evidence that plaintiff left her employment with defendant because of any continuing disability related to her compensable injuries.
12. During the next year, plaintiff was diagnosed with ovarian cancer. Plaintiff passed away on 27 February 1997.
 ***********
The foregoing stipulations and findings of fact engender the following additional:
 CONCLUSIONS OF LAW
1. On 20 July 1994, plaintiff injured her back in a specific traumatic incident arising out of and in the course of employment with defendant. Plaintiff's 20 July 1994 specific traumatic incident caused disabling aggravation of an existing mild or partially herniated L4-5 disc, or was the sole cause of her disabling herniated L4-5 disc. N.C. Gen. Stat. § 97-2(6);Wilder v. Barbour Boat Works, 84 N.C. App. 188, 352 S.E.2d 690
(1987).
2. As a result of her 20 July 1994 compensable injury plaintiff was temporarily totally disabled from 31 August 1995 through and including 4 February 1996, and retained a 10 percent permanent partial disability to her back, for which she is entitled to compensation. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-31.
3. Defendant is responsible for payment of plaintiff's medical expenses arising out of her compensable injuries. Accordingly, defendant is liable for the costs of plaintiff's 31 August 1995 surgery and any further medical expenses arising out of her 1991 and 1994 work-related injuries. N.C. Gen. Stat. § 97-25.
4. Plaintiff is not eligible for continuing compensation between the date of her retirement and the date of her death. N.C. Gen. Stat. § 97-2(9).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff's estate temporary total disability compensation at the rate of $318.63 per week from 31 August 1995 through and including 4 February 1996. This compensation has accrued and shall be paid in a lump sum subject to attorney's fee approved in paragraph 4 below.
2. Defendant shall pay plaintiff's estate compensation for the 10 percent permanent partial disability rating to her back at the rate of $318.63 per week, pursuant to the formula stated in North Carolina General Statutes Section 97-31(23). This compensation is also subject to the attorney's fee approved in paragraph 4 below.
3. To the extent they have not already done so, defendant shall pay plaintiff's estate for the costs incurred as a result of plaintiff's 31 August 1995 surgery, as well as all medical expenses related to her 1991 and 1994 compensable injuries.
4. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff's estate in paragraphs 1 and 2 above shall be paid directly to plaintiff's counsel. To the extent that these sums have accrued, twenty-five percent of any lump sum payment due plaintiff's estate shall be deducted and paid directly to plaintiff's counsel.
5. Defendant shall pay the costs of this action.
 S/ ________________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER